UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

SAMPSON COX,

                                        Plaintiff,

          v.                                                    9:20-CV-1235
                                                                (GLS/CFH)


CHIEF DOCTOR JOHN MORLEY et al.,

                                        Defendants.

─────────────────────────────────

APPEARANCES:

SAMPSON COX
Plaintiff, Pro Se
13-A-1519
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821-0051


GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Sampson Cox asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983").  *See* Dkt. No.

2 ("Compl.").  Plaintiff, who is incarcerated at Great Meadow Correctional Facility, is

proceeding in forma pauperis.[1]

─────────────────────

        [1] Plaintiff's complaint was originally filed in the Southern District of New York, together with an
application to proceed in forma pauperis and a motion for a temporary restraining order and preliminary
injunction.  *See* Compl.; Dkt. No. 1 ("IFP Application"); Dkt. No. 4 ("Motion for Injunctive Relief").  By Order
entered on September 16, 2020, the Honorable Colleen McMahon granted plaintiff's IFP Application.  Dkt. No. 9.

## II.      SUFFICIENCY OF THE COMPLAINT

### A.      Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir.

―――――――――――――――――

Thereafter, the case was reassigned to the Honorable Nelson Stephen Roman of the Southern District of New York.  Following the reassignment, plaintiff requested the appointment of counsel.  Dkt. No. 14.  By Order entered on October 6, 2020, Judge Roman denied plaintiff's request for appointment of counsel.  Dkt. No. 15.  By separate Order entered that same day, Judge Roman construed the complaint to assert claims based on alleged wrongdoing at Clinton, Sullivan, and Great Meadow Correctional Facilities, severed plaintiff's claims arising at Sullivan Correctional Facility from his claims arising at Clinton and Great Meadow Correctional Facilities, ordered that plaintiff's claims arising at Clinton and Great Meadow Correctional Facilities be transferred to the Northern District of New York, and denied the Motion for Injunctive Relief without prejudice.  *See* Dkt. No. 16 ("October 2020 Order").  On October 7, 2020, plaintiff's case was transferred, in part, to this District from the Southern District of New York.  Dkt. No. 17.  Following the transfer, additional filings in the Southern District of New York were transferred to this Court.  *See* Dkt. No. 18.

   [2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing

3

*Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

**B.     Summary of the Complaint**

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Clinton, Coxsackie, and Great Meadow Correctional Facilities.  *See generally* Compl.[3]  The following facts are set forth as alleged by plaintiff in his complaint.[4]

On March 29, 2018, plaintiff was evaluated by defendant Physician Susan Devlin-Varin for "an ongoing sexually transmitted disease" that he contracted in 2001.  Compl. at 6.[5] Plaintiff informed Devlin-Varin that he was experiencing "deep burning" in his scalp, face, thighs, feet, arms, neck, and back.  *Id*.  Plaintiff also advised Devlin-Varin about "white patches" and discoloration on certain areas of his body, but Devlin-Varin refused to examine plaintiff more closely.  *Id*. at 6-7.

On March 30, 2018, Devlin-Varin examined plaintiff again.  Compl. at 7.  Plaintiff

---

[3]  Although the October 2020 Order did not construe the complaint to assert any claims arising out of plaintiff's incarceration at Coxsackie Correctional Facility, a liberal construction of the allegations in the complaint suggests that plaintiff may have intended to assert a claim based on alleged wrongdoing at this facility, as discussed more fully below.

[4]  As noted in the October 2020 Order, before commencing this action, plaintiff filed an earlier action against employees at Clinton Correctional Facility, Sullivan Correctional Facility, and Department of Corrections and Community Supervision (DOCCS) headquarters in Albany, New York.  *See* October 2020 Order at 3 n.3 (citing *Cox v. Adams*, No. 18-CV-10152 (KMK), Dkt. No. 2 (S.D.N.Y. filed Oct. 31, 2018)).  On February 4, 2020, after the defendants in that case moved to dismiss the third amended complaint, the Honorable Kenneth M. Karas granted plaintiff's motion to voluntarily dismiss the matter without prejudice under Fed. R. Civ. P. 41(b). *See Cox v. Adams*, No. 18-CV-10152 (KMK), Dkt. No. 208 (S.D.N.Y. filed Feb. 4, 2020).  That same day, plaintiff submitted a letter to the Court seeking to withdraw his Rule 41(b) motion.  *See Cox v. Adams*, No. 18-CV-10152 (KMK), Dkt. No. 207.  The Court scheduled a telephone conference for the week of May 11, 2020, but the docket does not indicate whether a hearing took place.

[5]  According to information publicly available on the DOCCS website, plaintiff has been in DOCCS' custody since April, 2013.  *See* http://nysdoccslookup.doccs.ny.gov (last visited Nov. 18, 2020).

expressed concern regarding his condition and asked that Devlin-Varin examine certain parts of his body with a magnifying glass.  Compl. at 7.  Devlin-Varin advised that the medical unit did not have a magnifying glass.  *Id*.  Thereafter, plaintiff filed a grievance against Devlin-Varin.  *Id*.

On May 29, 2018, plaintiff was transferred to Sullivan Correctional Facility.  Compl. at 7.

On September 25, 2019, plaintiff was transported to Coxsackie Correctional Facility and examined by defendant Dermathologist Miranda Zander.  Compl. at 19.  Plaintiff requested that Zander order a biopsy.  *Id*.  Zander stated that he could order a biopsy, but "did not feel that it would expose a diagnosis as to [plaintiff's] problem."  *Id*.  Plaintiff "provided Zander with all relevant information such as [a] blood test taken in 2002[,] which revealed herpes 1 [and] mouth bumps[,]" and reminded defendant Zander that "his skin [has] continue[d] to burn away since early 2008[,]" when plaintiff was previously examined by Zander.  *Id*.

Zander ordered plaintiff "antibiotic pills for itching and a skin cream."  Compl. at 20. The pills and cream did not provide plaintiff any relief, and Zander was unable to diagnose plaintiff's condition.  *Id*.

On July 2, 2020, plaintiff was evaluated by defendant Doctor David Karandy.  Compl. at 20.  Also present during the evaluation was "a second medical [professional]" and two mental health professionals.  *Id*.

During the evaluation, plaintiff informed Karandy that "his skin [has] continue[d] to burn away since 2001[,] with symptoms of white patches that appear and . . . form into dark burnt blotches of skin throughout his body."  Compl. at 20.  After describing his symptoms in further

5

detail, plaintiff asked Karandy to examine "his private part[,]" and Karandy responded that he would do so "another time." *Id*. at 21-22. Karandy then asked plaintiff what medication he wanted. *Id*. at 23. Plaintiff "stated that he needs oxycycline shots and a follow up with oxycycline pills." *Id*. Karandy responded that he would order the medication. *Id*.

Plaintiff also asked to be sent to "the outside hospital" for further evaluation. Compl. at 23. Karandy advised plaintiff that "the worldly . . . virus was a[n] issue" and denied that request. *Id*.

Following the evaluation, plaintiff filed a grievance against Karandy. Compl. at 23. Thereafter, plaintiff was advised that Karandy would examine him in August. *Id*. Karandy, however, did not examine plaintiff in August. *Id*.

Defendants Chief Doctor John Morley and Chief Doctor Carl J. Koenigsmann became aware that plaintiff was suffering from "serious ongoing medical issues" and yet failed to make arrangements for plaintiff to receive medical attention at an outside hospital attention. Compl. at 25. Defendants Acting Commissioner Anthony J. Annucci and Governor Andrew M. Cuomo were also made aware of plaintiff's inadequate medical treatment. *Id*. at 26.

Liberally construed, the complaint asserts Eighth Amendment medical indifference claims against each of the named defendants in their individual and official capacities.[6]

---

[6] The complaint also expressly asserts that the alleged wrongdoing gives rise to Fourteenth Amendment due process claims. Compl. at 27. The complaint, however, lacks any allegations which plausibly suggest that plaintiff suffered a deprivation of a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (noting that an inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Moreover, the law is well-settled that "[w]here a particular Amendment" – in this case the Eighth Amendment – "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (internal quotation marks and citation omitted); *see also Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Thus, the Court does not construe the complaint to assert a procedural or substantive due process claim.

Plaintiff seeks money damages and injunctive relief.  Compl. at 32.  For a complete statement of plaintiff's claims, reference is made to the complaint.

## C.     Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676.  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted); *see also Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.").

### 1.  Official Capacity Claims

7

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Id.,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *See Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not

8

permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[7]

## 2. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976).  The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Id.*; *see Whitley v. Albers*, 475 U.S. 312, 319 (1986).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance*

---

[7]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. N.Y. State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

*v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "The standard of deliberate indifference includes both subjective and objective components."  *Id*.

First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279.  Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id*. at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280.  If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id*. (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a

10

prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc*., No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith*, 316 F.3d at 186); *Salahuddin*, 467 F.3d at 280 (noting that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability (citation omitted)).

With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'"). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Similarly, "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.

### (a)  Devlin-Varin

Liberally construed, the complaint alleges that Devlin-Varin violated plaintiff's Eighth Amendment rights by failing to closely examine areas of his body where he had skin issues, or diagnose his condition.  Compl. at 6-7.

As an initial matter, although plaintiff alleges that he was evaluated by Devlin-Varin for

11

his "ongoing" condition, it is entirely unclear whether, at the time of plaintiff's evaluation, he had already been prescribed medication for his condition.  Indeed, the complaint is devoid of any allegations explaining when before this evaluation, if ever, plaintiff received treatment for his condition, or what treatment, if any, he received.  Moreover, the complaint lacks any allegations describing plaintiff's condition both leading up to, and in the days and weeks following, his visit with Devlin-Varin, including how, if at all, his condition changed.  Thus, the Court has no basis to plausibly infer that plaintiff was suffering from a "sufficiently serious" condition when he was evaluated by Devlin-Varin.

Furthermore, even assuming plaintiff was suffering from a sufficiently serious medical condition when he was first evaluated by Devlin-Varin, the complaint does not allege any facts which plausibly suggest that Devlin-Varin's refusal to closely examine certain parts of plaintiff's body on March 29, 2018, was based on her deliberate indifference to his medical needs.  To the contrary, plaintiff's allegation that Devlin-Varin examined him again the very next day suggests, if anything, a desire to help plaintiff with his medical condition.  Compl. at 7.

In addition, plaintiff's only alleged issue with the treatment he received on March 30, 2018, is that Devlin-Varin refused to examine parts of his body with a magnifying glass because one was not available.  Compl. at 7.  At most, such allegations suggest a dissatisfaction with a course of treatment, which is insufficient to satisfy the subjective element of plaintiff's claim.  *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Martin v. Niagara*

*Cnty. Jail*, No. 05-CV-868, 2012 WL 3230435, at *10 (W.D.N.Y. Aug. 6, 2012) ("Plaintiff's demand for narcotic pain medications and defendants' unwillingness to prescribe them does not create an Eighth Amendment claim."); *Nelson v. Rodas*, No. 01-CV-7887, 2002 WL 31075804, at *15 (S.D.N.Y. Sept. 17, 2002) (complaint that doctors refused prisoner's request for a consultation with an outside physician was not a sufficient basis for an Eighth Amendment claim); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.").

Accordingly, plaintiff's medical indifference claim against Devlin-Varin is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (b)  Zander

Liberally construed, the complaint alleges that Zander violated plaintiff's Eighth Amendment rights by not ordering plaintiff a biopsy, and prescribing medication that was not effective.  Compl. at 19-20.

The law is well-settled that allegations of a disagreement with medical treatment or misdiagnosis of a condition, such as those made by plaintiff, are insufficient to satisfy the subjective element of an Eighth Amendment medical indifference claim.  *See Smith*, 316 F.3d at 184 ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims."); *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) ("We agree that the mere malpractice

13

of medicine in prison does not amount to an Eighth Amendment violation. . . . This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. . . . [But][c]onsciously disregarding an inmate's legitimate medical needs is not mere medical malpractice."); *Burgess v. County of Rensselaer*, No. 03-CV-0652 (NPM/RFT), 2006 WL 3729750, at *8 (N.D.N.Y. Dec. 18, 2006) (holding that "claim[s] of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, [are] not cognizable under section 1983"); *Clark v. Swain*, No. 08-CV-0637, 2011 WL 6938458, at *3 (W.D.N.Y. Oct. 12, 2011), *report and recommendation adopted sub nom. Clark v. Lay*, 2012 WL 11128 (W.D.N.Y. Jan. 3, 2012) ("That [defendant's] initial examination did not diagnose plaintiff's injury as a ruptured achilles tendon or cause her to refer plaintiff for immediate transfer to a hospital, is insufficient, without more, to satisfy the subjective element of a claim of deliberate indifference to a serious medical need."). Moreover, the complaint is devoid of any allegations which plausibly suggest that Zander knew that the medication she prescribed plaintiff was ineffective, and nonetheless refused to consider a different course of treatment.  Thus, plaintiff has failed to adequately allege that Zander acted with a sufficiently culpable state of mind in failing to order him a biopsy and/or prescribe him effective medication.

Accordingly, plaintiff's medical indifference claim against Zander is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (c) Karandy

14

Liberally construed, the complaint alleges that Karandy violated plaintiff's Eighth Amendment rights when he refused plaintiff's request for evaluation at an outside hospital and failed to examine plaintiff for a second time shortly after his evaluation on July 2, 2020. Compl. at 20-23.

As an initial matter, by plaintiff's own allegations, Karandy prescribed him the medication he requested, and only refused his request for evaluation at an outside hospital because of "the worldly . . . virus." Compl. at 23.[8]  Additionally, the complaint lacks any allegations regarding the effectiveness of the prescribed medication, let alone allegations which plausibly suggest that Karandy refused plaintiff medical treatment in or after August, 2020, despite becoming aware that the prescribed medication was ineffective.  In fact, the Court has no basis to plausibly infer that plaintiff communicated anything toKarandy regarding the prescribed medication.  Moreover, the documents attached to the complaint show that plaintiff was referred to a dermatologist for evaluation on or before August 7, 2020.  Compl. at 78.

In light of the foregoing, the Court has no basis to plausibly infer that Karandy denied plaintiff constitutionally adequate medical treatment, let alone did so out of deliberate indifference to his serious medical needs.  Accordingly, plaintiff's medical indifference claim against Karandy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[9]

---

[8]  It also appears from documents attached to the complaint that Karandy ordered lab work for plaintiff following his evaluation on July 2, 2020.  *See* Compl. at 57-58.

[9]  Because plaintiff has failed to adequately plead a medical indifference claim against Karandy, and for the reasons set forth in the October 2020 Order, the Court declines to reconsider plaintiff's Motion for Injunctive Relief at this time.

### (d)  Supervisory Officials

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[10]

In this case, the complaint is devoid of any allegations which plausibly suggest that Morley, Koenigsmann, Annucci, and/or Cuomo either (1) directly participated in any of the alleged wrongdoing at any of the facilities where plaintiff was incarcerated during the period

---

[10]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).  For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

giving rise to his claims, or (2) created, or allowed to continue, a policy or custom under which the alleged violations occurred.  Rather, the complaint alleges only that Morley and Koenigsmann became aware that plaintiff was suffering from "serious ongoing medical issues" and yet failed to make arrangements for him to receive medical attention at an outside hospital attention.  Compl. at 25.  Plaintiff further alleges that Annucci and Cuomo were also made aware of his inadequate medical treatment.  *Id*. at 26.

Even assuming plaintiff intended to assert Section 1983 claims against Morley, Koenigsmann, Annucci, and/or Cuomo under the second, fourth and/or fifth *Colon* categories, his allegations of personal involvement are entirely conclusory.  Plaintiff does not allege, for example, when or what he advised these officials regarding his medical condition and treatment needs.  Nor does he allege when he believes that these officials violated his constitutional rights.

Furthermore, the complaint makes clear that at various points between 2018 and 2020, plaintiff was evaluated by different medical professionals, prescribed medications, and received testing, including an ultrasound and an MRI.  *See* Compl. at 8-25.  In addition, the law is well-settled that "supervisory officials generally are entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment."  *Rashid v. Hussain*, No. 95-CV-0676, 1997 WL 642549, at *11 (N.D.N.Y. Oct. 15, 1997).

Thus, in the absence of any allegations explaining what Morley, Koenigsmann, Annucci, and Cuomo knew regarding plaintiff's medical care, and when they knew it, plaintiff's generic allegation that these supervisory officials failed to refer him to an outside hospital is insufficient to plausibly suggest their personal involvement in any wrongdoing.  *See, e.g.*,

17

*Guillory v. Haywood*, No. 9:13-CV-01564 (MAD/TWD), 2015 WL 268933, at *21 (N.D.N.Y. Jan. 21, 2015) ("Conclusory allegations that a supervisory official was aware of alleged constitutional violations and failed to remedy them fail to state a claim for supervisory liability.").  The Court would add only that insofar as plaintiff intended to assert Section 1983 claims against these supervisory officials based on events that occurred during plaintiff's incarceration at Clinton, Coxsackie, and Great Meadow Correctional Facilities, the dismissal of plaintiff's underlying Eighth Amendment claims also precludes his supervisory liability claims from moving forward.  *See, e.g.*, *Guillory*, 2015 WL 268933, at *22 ("[A] complaint that fails to state a claim for the underlying unlawful conduct also fails to state a claim against supervisory officials with respect thereto.").

Based on the foregoing, plaintiff's medical indifference claims against Morley, Koenigsmann, Annucci, and Cuomo are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D.    Opportunity to Amend

The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted).  Although the complaint does not necessarily indicate that plaintiff might be able to state a valid claim, the Court will nonetheless give him an opportunity to present a proposed amended complaint.

Any amended complaint submitted by plaintiff in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claim that specific individuals named as defendants in that pleading engaged in acts of misconduct or

wrongdoing which violated his constitutional rights and over which this Court may properly exercise jurisdiction. Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein.

Plaintiff is advised that his failure to file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further Order of the Court.[11]

### III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 claims for money damages against each of the named defendants in his or her official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment[12]; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that, if plaintiff wishes to proceed with this action he must file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order as set forth

---

[11] Insofar as plaintiff desires to pursue medical indifference claims against Morley, Koenigsmann, Annucci, and Cuomo based on events that occurred during his incarceration at Sullivan Correctional Facility, plaintiff is encouraged to bring any such claims in his action pending in the Southern District of New York.

[12] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez*, 171 F.3d at 796. However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

above[13]; and it is further

**ORDERED** that, upon the filing of an amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that, in the event plaintiff fails to file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided

---

[13] In the event plaintiff chooses to file an amended complaint, he may renew his request for injunctive relief.  Plaintiff is advised, however, that any renewed request for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent, and that a relationship exists between the injury claimed in the motion and the conduct giving rise to the surviving claim(s) in the amended complaint.  *See Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim); *McKenna v. Wright*, No. 01-CV-6571, 2002 WL 338375, *4 (S.D.N.Y. Mar. 4, 2002) ("[S]ince the movant must show that the alleged irreparable harm is imminent, and not remote or speculative, . . . a finding of irreparable harm [cannot be based] solely on past conduct."); *Phelan v. Hersh*, No. 9:10-CV-0011(GLS/RFT), 2010 WL 277064, at *6 (N.D.N.Y. Jan. 20, 2010) (noting that to establish irreparable harm "[i]n the context of medical care claims, a '[p]laintiff must therefore show that he has a medical condition which is likely to become significantly worse without some definite course of treatment.'" (quoting *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *1 (S.D.N.Y. June 27, 1994)); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (internal quotation marks and citations omitted)).

on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

      **ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

November 18, 2020
Albany, New York

                        Gary L. Sharpe
                        U.S. District Judge